# IN UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

**NORA DUNN,**

    **PLAINTIFF,**

**VS.**

**CARTER MANUEL, RMI REALTY GROUP, PAWNEE CONDOMINIUM ASSOCIATION, METCALF MANAGEMENT GROUP, SHARON HYDINGER,** *as personal representative of Fred Vines, deceased,*

    **DEFENDANTS.**

**CASE NO: 23-mc-5000**

## COMPLAINT

    Comes now the Plaintiff, NORA DUNN, hereinafter referred to as Plaintiff by her attorney and say the following:

### I. PARTIES

    1. The plaintiff, NORA DUNN, is a career State of Alabama employee, a resident of the State of Alabama and over the age of 19. She resides in Birmingham, Alabama. At all times relevant hereto, the plaintiff suffered from a mental health condition and a mental health hoarding disorder that the defendants were aware of and she sought support, cooperation and assistance in rendering her apartment habitable.

    2. The defendant CARTER MANUEL is a resident of Alabama and over the age of 19. He is the landlord of the property at 3119 Sunview Drive, Birmingham, AL 35243.

    3. Defendant RMI REALTY GROUP, 3119 Sunview Drive, Birmingham, AL 35243, is registered to do business in Alabama and subject to its jurisdiction as it manages the house that is the subject of this lawsuit.

4. Defendant METCALF REALTY, 2710 20th Street S, Birmingham, AL 35209 is registered to do business in Alabama and subject to its jurisdiction as it manages the house that is the subject of this lawsuit.

5. Defendant SHARON HYDINGER, *as personal representative of Fred Vines, deceased*, 3420 Bethune Drive, Birmingham, AL 35223 is a resident of the state of Alabama and over the age of 19 and the PAWNEE CONDOMINIUM HOMEOWNER'S ASSOCIATION, 1325 31st Street, Birmingham, AL 35205 is registered to do business in Alabama and subject to its jurisdiction as it manages the condominium apartment that is the subject of this lawsuit.

## II.  JURISDICTION

6. The Plaintiff alleges that the Defendant is subject to suit and engaged in conduct in violation of 42 U.S.C. § 3601, et. seq. and its subsequent codifications.

7. The Plaintiffs have satisfied all jurisdictional prerequisites to filing this action.

## III.  FACTS

8. Plaintiff Dunn reincorporates by reference as if fully set out herein, the allegations in paragraph's one through seven of this complaint.

9. Defendants Sharon Hydinger, Pawnee Condominium Association, Carter Manuel, RMI Realty Group and Metcalf Realty managed the plaintiff's apartment on behalf of, as the agent of and at the direction of the defendant homeowner and homeowner 's association. They collectively operated as principal and agent with regard to all acts herein. They are hereinafter and collectively referred to as Defendant or Defendants as the acts of each as agents and/or principal constitute the acts of all and they are jointly and severally liable for the acts of each other defendant as follows:

*A. Sharon Hydinger, Owner*

  i. On or around October, 2022 thru June, 2022, owner approved and directed her agents, defendants Metcalf, Carter Manuel and RMI, to deny the plaintiff's multiple requests for a reasonable accommodation to allow her proper time, support and assistance to manager her hoarding disorder and mental well-being in order to develop a plan to clean out and organize her apartment and to allow her to have an interim living arrangement while her apartment was brought up to habitable standards.

  ii. On or around October, 2022 thru June, 2023, owner approved and directed her agents, defendants Metcalf, Carter Manuel and RMI, to refuse to repair the plaintiff's apartment because of her hoarding disorder and her vulnerable emotional and mental state and because the apartment was the subject of hoarding while at the same time requiring her agent to continue to accept rent.

  iii. On or around October 21, 2022, owner approved and directed her agents, defendants Metcalf, Carter Manuel and RMI, to evict plaintiff because of her hoarding disorder and her vulnerable emotional and mental state and because the apartment was the subject of hoarding.

  iv. On or around October 2022 to June 2023, the owner and her agents, defendants Metcalf, Carter Manuel and RMI, retaliated against the plaintiff for demanding a dignified response to her hoarding disorder and mental and emotional state by ridiculing and making fun of her and her apartment, by blaming her for the lack of water and heating and air, by putting a lockbox on her door without her permission, by attempting to paint her as a poor credit risk although she was timely in her rent payment over the course of her lease, etc.

   v. On or around October 2022 to June 2023, the owner and her agents, defendants Metcalf, Carter Manuel and RMI, purposefully refused to provide running water, hot water, heating and

air and otherwise harassed and pressured plaintiff to move before her lease was up creating a hostile environment because of the hoarded AP retaliated against the plaintiff for demanding a dignified response to her hoarding disorder and mental and emotional state by ridiculing and making fun of her and her apartment, by blaming her for the lack of water and heating and air, by putting a lockbox on her door without her permission, by attempting to paint her as a poor credit risk although she was timely in her rent payment over the course of her lease, etc.

### B. Pawnee Condominium Homeowner's Association (HOA)

i. On or around October, 2022 thru June, 2022, the HOA approved and directed their agents, defendants Metcalf, Carter Manuel and RMI, to deny the plaintiff's multiple requests for a reasonable accommodation to allow her proper time, support and assistance to manager her hoarding disorder and mental well-being in order to develop a plan to clean out and organize her apartment and to allow her to have an interim living arrangement while her apartment was brought up to habitable standards.

ii. On or around October, 2022 thru June, 2023, the HOA approved and directed its agents, defendants Metcalf, Carter Manuel and RMI, to refuse to repair the plaintiff's apartment because of her hoarding disorder and her vulnerable emotional and mental state and because the apartment was the subject of hoarding while at the same time requiring her agent to continue to accept rent.

iii. On or around October 21, 2022, HOA approved and directed its agents, defendants Metcalf, Carter Manuel and RMI, to evict plaintiff because of her hoarding disorder and her vulnerable emotional and mental state and because the apartment was the subject of hoarding.

iv. On or around October 2022 to June 2023, the HOA and its agents, defendants Metcalf, Carter Manuel and RMI, retaliated against the plaintiff for demanding a dignified response to her

hoarding disorder and mental and emotional state by ridiculing and making fun of her and her apartment, by blaming her for the lack of water and heating and air, by putting a lockbox on her door without her permission, by attempting to paint her as a poor credit risk although she was timely in her rent payment over the course of her lease, etc.

   v.  On or around October 2022 to June 2023, the HOA and its agents, defendants Metcalf, Carter Manuel and RMI, purposefully refused to provide running water, hot water, heating and air and otherwise harassed and pressured plaintiff to move before her lease was up creating a hostile environment because of the hoarded AP retaliated against the plaintiff for demanding a dignified response to her hoarding disorder and mental and emotional state by ridiculing and making fun of her and her apartment, by blaming her for the lack of water and heating and air, by putting a lockbox on her door without her permission, by attempting to paint her as a poor credit risk although she was timely in her rent payment over the course of her lease, etc.

*C. Carter Manual & RMI, Agent Property Manager*

  i.  On or around October, 2022 thru June, 2022, RMI and Carter Manuel denied the plaintiff's multiple requests for a reasonable accommodation to allow her proper time, support and assistance to manager her hoarding disorder and mental well-being in order to develop a plan to clean out and organize her apartment and to allow her to have an interim living arrangement while her apartment was brought up to habitable standards.

  ii.  On or around October, 2022 thru June, 2023, RMI and Carter Manuel refused to repair the plaintiff's apartment because of her hoarding disorder and her vulnerable emotional and mental state and because the apartment was the subject of hoarding while at the same time requiring her agent to continue to accept rent.

  iii.  On  or around October 21, 2022, RMI and Carter Manuel evicted plaintiff because of her hoarding disorder and her vulnerable emotional and mental state and because the apartment was the subject of hoarding.

  iv. On or around October 2022 to June 2023, RMI and Carter Manuel retaliated against the plaintiff for demanding a dignified response to her hoarding disorder and mental and emotional state by ridiculing and making fun of her and her apartment, by blaming her for the lack of water and heating and air, by putting a lockbox on her door without her permission, by attempting to paint her as a poor credit risk although she was timely in her rent payment over the course of her lease, etc.

   v.  On or around October 2022 to June 2023, RMI and Carter Manuel, purposefully refused to provide running water, hot water, heating and air and otherwise harassed and pressured plaintiff to move before her lease was up creating a hostile environment because of the hoarded AP retaliated against the plaintiff for demanding a dignified response to her hoarding disorder and mental and emotional state by ridiculing and making fun of her and her apartment, by blaming her for the lack of water and heating and air, by putting a lockbox on her door without her permission, by attempting to paint her as a poor credit risk although she was timely in her rent payment over the course of her lease, etc.

*D. Metcalf, Agent Property Manager*

  i. On or around October, 2022 thru June, 2022, Metcalf, thru its agent and proxy RMI and Carter Manuel, denied the plaintiff's multiple requests for a reasonable accommodation to allow her proper time, support and assistance to manager her hoarding disorder and mental well-being in order to develop a plan to clean out and organize her apartment and to allow her to have an interim living arrangement while her apartment was brought up to habitable standards.

    ii. On or around October, 2022 thru June, 2023, Metcalf, refused to repair the plaintiff's apartment because of her hoarding disorder and her vulnerable emotional and mental state and because the apartment was the subject of hoarding while at the same time requiring her agent to continue to accept rent.

    iii. On or around October 21, 2022, Metcalf, thru its agent and proxy RMI and Carter Manuel, evicted plaintiff because of her hoarding disorder and her vulnerable emotional and mental state and because the apartment was the subject of hoarding.

    iv. On or around October 2022 to June 2023, Metcalf retaliated against the plaintiff for demanding a dignified response to her hoarding disorder and mental and emotional state by ridiculing and making fun of her and her apartment, by blaming her for the lack of water and heating and air, by putting a lockbox on her door without her permission, by attempting to paint her as a poor credit risk although she was timely in her rent payment over the course of her lease, etc.

    v. On or around October 2022 to June 2023, Metcalf purposefully refused to provide running water, hot water, heating and air and otherwise harassed and pressured plaintiff to move before her lease was up creating a hostile environment because of the hoarded AP retaliated against the plaintiff for demanding a dignified response to her hoarding disorder and mental and emotional state by ridiculing and making fun of her and her apartment, by blaming her for the lack of water and heating and air, by putting a lockbox on her door without her permission, by attempting to paint her as a poor credit risk although she was timely in her rent payment over the course of her lease, etc.

10. From approximately October 2022 to April 2023, defendants accepted the plaintiff's rent but refused to provide running water, hot water, proper plumbing, sewer disposal & heating and air because plaintiff's apartment was filled with her personal items.

11. Put another way, Defendants refused to repair or provide running water, hot water, proper plumbing, sewer disposal & heating and air because the plaintiff had a mental health and hoarding disorder that resulted in her storing volumes of clothes and personal items in boxes and throughout her apartment.

12. Ms. Dunn advised defendants and their staff members on multiple occasions that managing her large volume of personal items coupled with the despicable condition of the apartment was causing her great stress and that she needed an alternative location to live in in order to begin to deal with the overwhelming situation.

13. Ms. Dunn suffered from and was overwhelmed by a mental health condition leading to the collection of lots of personal items in her apartment. She advised the defendants of the same prior to their violations herein.

14. Notably, "hoarding disorder" has been recognized over a decade as a separate and distinct mental health condition and it does not require a formal diagnosis. The American Psychiatric Association defines hoarding disorder as follows:

*". . .persistent difficulty getting rid of or parting with possessions due to a perceived need to save the items. Attempts to part with possessions create considerable distress and lead to decisions to save them. The resulting clutter disrupts the ability to use living spaces." (American Psychiatric Association, 2013)*

At least one federal court has also recognized "hoarding disorder" as a disorder actionable under the FHA and as protected conduct under the Act. [See *Smith v. Hillside Vill*., 279 F.Supp.3d 537 (D. N.J. 2017)]

15. Of course, after multiple requests for a temporary, substitute apartment due to the fact that the plaintiff was current on her rent, had several months left on her lease and otherwise did not have any other place to live, Defendants refused to offer plaintiff another apartment to temporarily live in while her apartment was repaired and to give her time to address the volumes of personal items stored in her apartment.

16. In response to the plaintiff's pleas to defendants for their reasonable assistance and cooperation given her emotional state and the hoarding disorder, defendants sent her a letter in October 2022 demanding that she leave and clean out her apartment as a condition precedent to restoring her apartment to a habitable state.

17. The plaintiff later was forced to move out under court supervision and was essentially homeless as she lived in a temporary long term stay hotel.

18. The plaintiff's apartment had also been condemned by the City of Birmingham as uninhabitable and all persons were prohibiting further entry to her apartment per the posted condemnation order.

19. In spite of the above, Defendants continued to accept rent but refused to make repairs.

20. In retaliation for plaintiff's complaint about uninhabitable state of apartment, Defendants retaliated against the plaintiff by ridiculing her because of her hoarding and mental health issues and attempted to paint her as an irresponsible credit risk event though she was current on her rent and had lived in the space for years.

## IV.   CAUSE(S) OF ACTION

**COUNT ONE – INTENTIONAL DISCRIMINATION (FAIR HOUSING ACT)**

21. Plaintiff Dunn incorporates by reference paragraphs one through twenty as if fully set out herein.

22. The FHA makes it unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of ... (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." 42 U.S.C. § 3604(f)(1) (emphasis added).

23. Discrimination covered by the FHAA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [mentally retarded] person[s] equal opportunity to use and enjoy a dwelling." 42 § 3604(f)(3)(B). *Association for Retarded Citizens, Inc., of Jefferson County v. City of Fultondale*, 672 So.2d 785 (Ala. 1995)

24. Defendants engaged in the following unlawful discriminatory acts:

a. refused to repair and restore heating and air because of mental health hoarding disorder and mental state *in violation of 42 U.S.C. § 3604(f)(1) and 42 § 3604(f)(3)(B)*;

b. refused to repair and restore running water because of mental health hoarding disorder and mental state *in violation of 42 U.S.C. § 3604(f)(1) and 42 § 3604(f)(3)(B)*;

c. refused to clean up raw sewage because of mental health hoarding disorder and mental state *in violation of 42 U.S.C. § 3604(f)(1) and 42 § 3604(f)(3)(B)*;

d. refused to repair and restore toilet, bathtub and sink plumbing because of mental health hoarding disorder and mental state *in violation of 42 U.S.C. § 3604(f)(1) and 42 § 3604(f)(3)(B)*;

e. ridiculed Ms. Dunn because of mental health hoarding disorder and mental state referring to the apartment negatively and in derogatory terms *in violation of 42 U.S.C. § 3604(f)(1) and 42 § 3604(f)(3)(B)*;

f. refused to eradicate mold because of Ms. Dunn's mental health hoarding disorder and mental state *in violation of 42 U.S.C. § 3604(f)(1) and 42 § 3604(f)(3)(B)*;

g. actually and constructively evicted Ms. Dunn because of Ms. Dunn's mental health hoarding disorder and mental state *in violation of 42 U.S.C. § 3604(f)(1) and 42 § 3604(f)(3)(B)*;

25. Also, at all times relevant herein, there was an absence of written or oral guidelines which foster the neutral resolution of adversarial complaints by employees similarly situated to Plaintiff Dunn. Instead, decisions about disabled residents were the result of the subjective judgment of non-disabled management, supervisors and staff.

26. After the intentional discrimination described above, the Defendants ratified, confirmed, acquiesced in and, otherwise, adopted said discriminatory acts of Plaintiff Dunn's property managers and property manager employees. Therefore, these violations constitute the policy of the Defendants and said policies are continuing.

27. Plaintiff Dunn's past and present property managers/owners were motivated by the Defendants' disdain, disrespect and/or insensitivity to disabled residents.

28. As a result of the Defendants' actions, Plaintiff Dunn suffered the following injuries: lost wages and benefits, extreme mental anguish, permanent physical injury, past present and future pain and suffering, past, present and future medical bills, lost profits, nominal damages, temporary and permanent injury, etc.

29. Additionally, the Defendants' discriminatory practices have adversely affected Plaintiff Dunn by promoting and reinforcing disability stereotypes, badges of inferiority and biases.

30. Plaintiff Dunn seeks to redress the wrongs alleged herein for declaratory relief, other equitable relief, and damages, as well as other remedies which the cause of justice shall require. Plaintiff Dunn is now suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices unless enjoined by this Court.

## COUNT TWO – RETALIATION & CONTINUING VIOLATION

31. Plaintiff Dunn re-alleges and incorporates by reference paragraphs one through thirty as if fully set out below.

32. The Defendants have deprived Plaintiff Dunn of the opportunity to live discrimination free and otherwise contract for lawful housing conditions in retaliation for Plaintiff Dunn's hoarding disorder and mental and emotional stress relating to her complaints about being mentally overwhelmed by the condition of her apartment.

33. Plaintiff has personal items that she cannot retrieve because the apartment is condemned and has not been repaired so the situation is continuing.

## COUNT THREE – HOSTILE ENVIRONMENT

34. Plaintiff Dunn re-alleges and incorporates by reference paragraphs one through thirty-three as if fully set out below.

35. The Defendants created an environment that blamed and victimized Ms. Dunn because of the clutter from her personal items; because of her hoarding disorder condition; because of her caution to defendants that their dehumanizing treatment of her and their eviction efforts were negatively affecting her emotional and mental health.

36. The situation became so unbearable and hostile given the defendants unwillingness to reasonably accommodate her, that Plaintiff could no longer bear to live in the cold, mold and sewage infested environment; she became temporarily homeless; and she was required to pay to live in an expensive daily motel typically reserved for transient and homeless persons.

## COUNT FOUR – FAILURE TO ACCOMODATE

37. Plaintiff Dunn re-alleges and incorporates by reference paragraphs one through thirty-six as if fully set out below.

38. In this jurisdiction, "[a] successful failure-to-accommodate claim has four elements. To prevail, one must prove that (1) [she] is disabled within the meaning of the FHA, (2) [she] requested a reasonable accommodation, (3) the requested accommodation was necessary to afford [her] an opportunity to use and enjoy [her] dwelling, and (4) the defendants refused to make the accommodation. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218–19 (11th Cir.2008). <u>*Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.,*</u> 765 F.3d 1277 (11th Cir. 2014)

39. On or around October 2022, Plaintiff Dunn sent multiple online notices to defendants advising them that the condition of her apartment was overwhelming her and needed to be corrected.

40. On and around October 2022, defendants inspected Ms. Dunn's apartment because of her complaints and concluded by noting her hoarding condition on several occasions in an effort to ridicule her and blame her for the uninhabitable condition of her apartment.

41. Around October 2022, Ms. Dunn explained to Defendants' maintenance staff while they were at her apartment, namely, Preston Pelfrey and Defendant Carter Emmanuel, that she was emotionally overwhelmed, her mental health condition was being aggravated by the conditions of the apartment and their response and that she needed the defendants to provide her with a substitute apartment and give her some time to gather assistance and support to move and separate her personal items, many of which had been damaged by the mold and sewage beyond use.

42. Defendants responded by refusing to accommodate her disability and by attempting to evict Ms. Dunn because of the hoarding conditions and her fragile mental state instead of working with her to repair the apartment and assist with her transitioning into a temporary living setup.

## V. PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs' pray that this Court will assume jurisdiction of this matter and:

1. Issue a finding that the Defendants' policies, practices, procedures and customs are violative of the rights of the Plaintiffs, as secured by Fair Housing Act, 42 U.S.C.A. § 3601, et. seq, as amended.

2. Grant the Plaintiffs such other relief as this cause may require, including compensatory damages, punitive damages, special damages, costs, attorney's fees and expenses.

3. Enjoin the Defendant from continuing to engage in such discriminatory practices.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Respectfully Submitted,

s/Lee Wendell Loder
Lee Wendell Loder
Attorney for Plaintiff
Loder, P.C.
PO Box 13545
Birmingham, Alabama 35202
(205)326-0566

**SERVE DEFENDANTS AT**:

CARTER MANUEL
3119 Sunview Drive,
Birmingham, AL 35243

PAWNEE CONDOMINIUM HOMEOWNER'S ASSOCIATION
1325 31st Street
Birmingham, AL 35205

RMI REALTY GROUP
3119 Sunview Drive
Birmingham, AL 35243

SHARON HYDINGER, *as personal representative of Fred Vines, deceased*,
3420 Bethune Drive
Birmingham, AL 35223

METCALF REALTY
2710 20th Street S
Birmingham, AL 35209