IN UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **NORA DUNN,** <br><br> **PLAINTIFF,** <br><br> VS. <br><br> **SHARON HYDINGER,** *as personal representative of Fred Vines, deceased,* <br><br> **DEFENDANT.** | **CASE NO: 2:23-cv-00871-RDP** |

### PLAINTIFF'S FIRST AMENDED AND RESTATED COMPLAINT

Comes now the Plaintiff, NORA DUNN, hereinafter referred to as Tenant by her attorney and says the following:

### I.  PARTIES

1. The tenant and tenant, NORA DUNN, is a career State of Alabama employee, a resident of the State of Alabama and over the age of 19.  She resides in Birmingham, Alabama. At all times relevant hereto, the tenant suffered from a mental health condition and a mental health hoarding disorder that the landlord was aware of and for which the tenant sought support, cooperation and assistance in rendering her apartment habitable.

2.  Defendant and landlord, SHARON HYDINGER, *individually and as personal representative of Fred Vines, deceased*, 3420 Bethune Drive, Birmingham, AL 35223 is a resident of the state of Alabama and over the age of 19.

## II.  JURISDICTION

3.   The Plaintiff alleges that the Defendant is subject to suit and engaged in conduct in violation of 42 U.S.C. § 3601, et. seq. and its subsequent codifications, to common law and the Alabama Landlord Tenant Law, 359-1, et. seq, 35-9A-101, et. seq. and § 6-6-310 et seq., Ala. Code 1975 ("the Act").

4.   The Plaintiff has satisfied all jurisdictional prerequisites to filing this action.

## III.  FACTS

5.   The landlord, Sharon Hydinger, individually and through her agents, Pawnee Condominium Association, Carter Manuel, RMI Realty Group and Metcalf Realty managed the tenant's apartment.

*Sharon Hydinger, Defendant Owner*

i.   On or around October, 2022 thru June, 2023, the landlord approved and directed her agents, Carter Manuel and RMI:

a) to deny the tenant's multiple requests for a reasonable accommodation;

b) to allow the tenant proper time, support and assistance to manage her hoarding disorder and mental well-being;

c) to develop a plan to clean out and organize the tenant's apartment;

d) to allow the tenant to have an interim living arrangement while her apartment was brought up to habitable standards.

ii.   On or around October, 2022 thru June, 2023, the landlord approved and directed her agents, Carter Manuel and RMI, to refuse to repair the tenant's apartment because of her hoarding disorder and her vulnerable emotional and mental state and because the apartment was the subject of hoarding while at the same time requiring her agents to continue to accept rent.

   iii. On or around October 21, 2022, the landlord approved and directed her agents, Carter Manuel and RMI to send an eviction letter to the tenant because of tenant's hoarding disorder, tenant's vulnerable emotional and mental state and because the tenant was a hoarder.

   iv. On or around October 2022 to June 2023, the landlord, through her agents Carter Manuel and RMI, retaliated against the tenant:

    a) by ridiculing and making fun of her and her apartment as dirty and trashy and by blaming the tenant for the lack of water and heating and air:

    b) by putting a lockbox on her door without her permission;

    c) by attempting to falsely characterize the tenant as a poor credit risk to avoid offering the tenant another apartment or temporary living space.

   v. On or around October 2022 to June 2023, the landlord through her agents, Pawnee Condominiums, Metcalf, Carter Manuel and RMI, purposefully refused to provide running water, hot water, heating and air and otherwise harassed and pressured the tenant to move before her lease was up, creating a hostile environment.

   6. From approximately October 2022 to April 2023, the landlord accepted the tenant's rent but refused to provide running water, hot water, proper plumbing, sewer disposal & heating and air because tenant's apartment was filled with the tenant's personal items.

   7. Put another way, the landlord refused to repair or provide running water, hot water, proper plumbing, sewer disposal & heating and air because the tenant had a mental health and hoarding disorder that resulted in her storing volumes of clothes and personal items in boxes and throughout her apartment.

   8. Ms. Dunn advised the landlord and their staff members on multiple occasions that managing her large volume of personal items coupled with the despicable condition of the

apartment was causing her great stress and that she needed an alternative location to live in order to begin to manage the overwhelming pressure by the landlord for her to move.

9. Ms. Dunn suffered from and was overwhelmed by a mental health condition leading to the collection of lots of personal items in her apartment. She advised the landlord of the same prior to their violations herein.

10. Notably, "hoarding disorder[1]" has been recognized over a decade as a separate and distinct mental health condition and it does not require a formal diagnosis. The American Psychiatric Association defines hoarding disorder as follows:

> ". . .persistent difficulty getting rid of or parting with possessions due to a perceived need to save the items. Attempts to part with possessions create considerable distress and lead to decisions to save them. The resulting clutter disrupts the ability to use living spaces." (American Psychiatric Association, 2013)

11. Of course, after multiple requests for a temporary, substitute apartment due to the fact that the tenant was current on her rent, had several months left on her lease and otherwise did not have any other place to live, the landlord refused to offer tenant another apartment to temporarily live in while her apartment was repaired and to give her time to address the volumes of personal items stored in her apartment.

12. In response to the tenant's pleas to the landlord for her reasonable assistance and cooperation given the tenant's emotional state and the tenant's hoarding disorder, the landlord sent the tenant a letter in October 2022, through her agents RMI and Manuel, demanding that the tenant leave her apartment as a condition precedent to restoring her apartment to a habitable state.

13. The tenant later was forced to move out under court supervision and was essentially

---

[1] *At least one federal court has also recognized "hoarding disorder" as a disorder actionable under the FHA and as protected conduct under the Act. [See* Smith v. Hillside Vill.*, 279 F.Supp.3d 537 (D. N.J. 2017)]*

homeless as she lived in a temporary long term stay hotel.

14. The tenant's apartment was also condemned by the City of Birmingham as uninhabitable and all persons were prohibiting further entry to her apartment per the posted condemnation order.

15. In spite of the above, the landlord continued to accept rent but refused to make repairs and make the tenant's apartment habitable.

16. In retaliation for tenant's complaint about the uninhabitable state of apartment, the landlord retaliated against the tenant by ridiculing her hoarding and mental health issues.

### IV.   CAUSE(S) OF ACTION

**COUNT ONE – INTENTIONAL DISCRIMINATION (FAIR HOUSING ACT)**

17. The FHA makes it unlawful "to discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of ... (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." 42 U.S.C. § 3604(f)(1) (emphasis added).

18. Discrimination covered by the FHAA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [mentally retarded] person[s] equal opportunity to use and enjoy a dwelling." 42 § 3604(f)(3)(B). *Association for Retarded Citizens, Inc., of Jefferson County v. City of Fultondale*, 672 So.2d 785 (Ala. 1995)

19. From at least October, 2022 thru June, 2023, the landlord engaged in the following unlawful discriminatory acts:

   a. refused to repair and restore heating and air because of mental health hoarding disorder and mental state *in violation of 42 U.S.C. § 3604(f)(1) and 42 § 3604(f)(3)(B)*;

   b. refused to repair and restore running water because of mental health hoarding disorder and mental state *in violation of 42 U.S.C. § 3604(f)(1) and 42 § 3604(f)(3)(B)*;

   c. refused to clean up raw sewage because of mental health hoarding disorder and mental state *in violation of 42 U.S.C. § 3604(f)(1) and 42 § 3604(f)(3)(B)*;

   d. refused to repair and restore toilet, bathtub and sink plumbing because of mental health hoarding disorder and mental state *in violation of 42 U.S.C. § 3604(f)(1) and 42 § 3604(f)(3)(B)*;

   e. ridiculed Ms. Dunn because of mental health hoarding disorder and mental state referring to the apartment negatively and in derogatory terms *in violation of 42 U.S.C. § 3604(f)(1) and 42 § 3604(f)(3)(B)*;

   f. refused to eradicate mold because of Ms. Dunn's mental health hoarding disorder and mental state *in violation of 42 U.S.C. § 3604(f)(1) and 42 § 3604(f)(3)(B)*;

   g. actually and constructively evicted Ms. Dunn because of Ms. Dunn's mental health hoarding disorder and mental state *in violation of 42 U.S.C. § 3604(f)(1) and 42 § 3604(f)(3)(B)*;

   20. Also, at all times relevant herein, there was an absence of written or oral guidelines which foster the neutral resolution of adversarial complaints by employees similarly situated to the tenant.  Instead, decisions about disabled residents were the result of the subjective judgment of non-disabled management, supervisors and staff.

   21. After the intentional discrimination described above, the landlord ratified, confirmed, acquiesced in and, otherwise, adopted said discriminatory acts of agents Pawnee Condominiums, Metcalf Realty, RMI and Manuel. Therefore, these violations constitute the policy of the landlord and said policies are continuing.

   22. Landlord was motivated by the landlord's disdain, disrespect and/or insensitivity to disabled residents.

23. As a result of the landlord's actions, tenant suffered the following injuries: lost wages and benefits, extreme mental anguish, permanent physical injury, past present and future pain and suffering, past, present and future medical bills, lost profits, nominal damages, temporary and permanent injury, etc.

24. Additionally, the landlord's discriminatory practices have adversely affected tenant by promoting and reinforcing disability stereotypes, badges of inferiority and biases.

25. Tenant seeks to redress the wrongs alleged herein for declaratory relief, other equitable relief, and damages, as well as other remedies which the cause of justice shall require.

### COUNT TWO – RETALIATION

26. The landlord have deprived tenant of the opportunity to live discrimination free and otherwise contract for lawful housing conditions in retaliation for tenant's hoarding disorder.

27. The landlord accused the tenant of causing the plumbing and other chronic problems with the apartment and attempted to illegally evict the tenant because the tenant sought an accommodation for her condition and sought this relief to compel the landlord's compliances with the FHA.

28. Hence, the landlord is guilty of retaliatory conduct in violation of the FHA.

### COUNT THREE – HOSTILE ENVIRONMENT

29. The landlord created an environment that blamed and victimized Ms. Dunn because of the clutter from her personal items; because of her hoarding disorder condition; because of her caution to the landlord that their dehumanizing treatment of her and their eviction efforts were negatively affecting her emotional and mental health.

30. The situation became so unbearable and hostile given the landlord's unwillingness to reasonably accommodate her, that the tenant could no longer bear to live in the cold, mold and

sewage infested environment; she became temporarily homeless; and she was required to pay to live in an expensive daily motel typically reserved for transient and homeless persons.

31.  Consequently, the landlord created a hostile and unfair housing environment.

## COUNT FOUR – FAILURE TO ACCOMODATE

32. In this jurisdiction, "[a] successful failure-to-accommodate claim has four elements. To prevail, one must prove that (1) [she] is disabled within the meaning of the FHA, (2) [she] requested a reasonable accommodation, (3) the requested accommodation was necessary to afford [her] an opportunity to use and enjoy [her] dwelling, and (4) the landlord refused to make the accommodation. *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218–19 (11th Cir.2008). *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.,* 765 F.3d 1277 (11th Cir. 2014)

33.  On or around October 2022, tenant sent multiple online notices to the landlord advising them that the condition of her apartment was overwhelming her and needed to be corrected.

34.  On and around October 2022, the landlord inspected Ms. Dunn's apartment because of her complaints and concluded the inspection by highlighting her hoarding condition in an effort to ridicule her and blame her for the uninhabitable condition of her apartment.

35. Around October 2022, Ms. Dunn explained to landlord's maintenance staff while they were at her apartment, namely, Preston Pelfrey and Carter Emmanuel, that she was emotionally overwhelmed, her mental health condition was being aggravated by the conditions of the apartment and their response and that she needed the landlord to provide her with a substitute apartment and give her some time to gather assistance and support to move and separate her personal items, many of which had been damaged by the mold and sewage beyond use.

36. The landlord responded to her accommodation request by refusing to accommodate her disability and by attempting to evict Ms. Dunn because of the hoarding conditions and her fragile

mental state instead of working with her to repair the apartment and assist with her transitioning into a temporary living setup.

## COUNT FIVE – ALABAMA LANDLORD TENANT ACT

37. The landlord are landlords as defined by the Act.

38. After repeated notices and requests to address the same, the landlord has:

    a.    failed to comply with local and national building codes that affect health and safety in violation of 35-9A-204(a)(1). Specifically, the sewage, sanitary and plumbing conditions are structurally unsound and unsafe;

    b.    failed to make repairs to sewage and plumbing to comply with local, state and national codes in violation of 35-9A204(a)(2);

    c.    failed to keep the plumbing, sanitary (i.e. toilets), and ventilating systems, etc. in good and safe working condition and permitted an infestation of sewage in violation of 35-9A204(a)(4);

    d.    failed to supply clean water in violation of violation of 35-9A-204(a)(6). Specifically, they permitted sewage to compromise the drinking water system rendering the water distribution system inoperable and unsafe;

    e.    created and/or allowed the above conditions to persist to constructively evict and retaliate against the tenant in violation of 35-9A-427 and 35-9A-501 and because of her complaints regarding unsafe conditions in violation of the Act.

39. The landlord unlawfully retaliated against said tenant by seeking to evict her from the property.

40. The tenant experienced extreme distress and humiliation, fear for her health and safety and mental anguish.

.

41. The tenant seeks to redress the wrongs alleged herein for declaratory relief, other equitable relief, and damages, as well as other remedies which the cause of justice shall require.

## COUNT SIX – *BREACH OF DUTY OF REASONABLE CARE/AFFIRMATIVE NEGLIGENCE*

42. The tenant was exposed to noxious fumes and toxic particles from raw water and sewage seeping out of the plumbing and ceiling and otherwise compromising the integrity of the drinking water.

43. The landlord owed the tenant a duty to warn them of hidden dangerous conditions that were known to the landlord and to exercise reasonable care to maintain a safe facility.

44. Prior to the exposure, the landlord improperly repaired the plumbing and failed to maintain the sewer pipes contributing to the sewer spill and flooding from the above apartment.

45. Prior to the tenant's toxic exposure, the landlord knew and should have known that improperly repairing and maintaining the water/sewage pipes and failing to fix the water/sewer leak would expose the tenant to a risk of serious injury.

## COUNT SEVEN - WANTON/RECKLESSNESS

46. The landlord's decision to improperly repair and maintain the sewer and plumbing during a time when tenant were in the house was reckless and with deliberate disregard for the safety of tenants.

47. As a direct and proximate result of the landlord' intentional and wanton efforts at improperly maintaining the sewer and plumbing without warning and when tenant were present, the tenant were caused to suffer a exposure to toxic and dangerous fumes and sewage; to be under the care of physicians and others for a period of time; to suffer past, present and future damages, mental anguish & pain and suffering; to incur past, present & future doctor and

medical treatment and bills; to suffer permanent injury and scarring; and to lose the opportunity for gainful employment.

### COUNT EIGHT - BREACH OF CONTRACT

48.   The landlord agreed to provide the tenant a house in reasonably habitable condition in exchange for the tenant's tender of payment.  The tenant Dunn tendered payment and the landlord failed to provide the tenant a house that was habitable.

49.   Additionally, the landlord unlawfully attempted to charge illegal fees and costs and evict the tenant even though the tenant was current on her rent.  Consequently, the landlord breached said contract.

### COUNT NINE – WRONGFUL EVICTION/ABUSE OF PROCESS

50.   The landlord effectively sought to constructively evict the tenant.

51.   To intimidate and force the tenant to leave the landlord has intentionally and willfully:

   a.   failed to comply with local and national building codes that affect health and safety in violation of 35-9A-204(a)(1). Specifically, the sewage, sanitary and plumbing conditions are structurally unsound and unsafe;

   b.   failed to make repairs to sewage and plumbing to comply with local, state and national codes in violation of 35-9A204(a)(2);

   c.   failed to keep the plumbing, sanitary (i.e. toilets),
and ventilating systems, etc. in good and safe working condition and permitted an infestation of sewage in violation of 35-9A204(a)(4);

  d. failed to supply clean water in violation of violation of 35-9A-204(a)(6). Specifically, they permitted sewage to compromise the drinking water system rendering the water distribution system inoperable and unsafe;

  e. created and/or allowed the above conditions to persist to constructively evict and retaliate against the tenant in violation of 35-9A-427 and 35-9A-501 and because of their complaints regarding unsafe conditions in violation of the Act.

  f. imposed unlawful and unreasonable occupancy restrictions.

52. The above acts also violate common law notions of constructive eviction.

### V. PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs' pray that this Court will assume jurisdiction of this matter and:

1. Issue a finding that the Landlord's policies, practices, procedures and customs are violative of the rights of the tenant, as secured by Fair Housing Act, 42 U.S.C.A. § 3601, et. seq, as amended, of the Alabama Landlord Tenant Act and of state and federal common law.

2. Grant the Plaintiff such other relief as this cause may require, including compensatory damages, punitive damages, special damages, costs, attorney's fees and expenses.

3. Enjoin the Defendant from continuing to engage in such discriminatory practices.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Respectfully Submitted,

s/Lee Wendell Loder
Lee Wendell Loder
Attorney for Plaintiff
Loder, P.C.
PO Box 13545
Birmingham, Alabama 35202
(205)326-0566

## VI.  CERTIFICATE OF SERVICE

I hereby certify that a copy of the above was served on counsel for the defendants by electronic filing on this the 26th day of March, 2024.

                                            s/Lee Wendell Loder
                                            Lee Wendell Loder