## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| NORA DUNN, | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | }    **Case No.: 2:23-cv-00871-RDP** |
| | } |
| CARTER MANUEL, et al., | } |
| | } |
| **Defendants.** | } |

## MEMORANDUM OPINION

This case is before the court on the Motion to Dismiss filed by Defendant Sharon Hydinger ("Defendant"). (Doc. # 42). The Motion has been fully briefed. (Docs. # 43, 44, 47). For the reasons discussed below, the motion is due to be granted.

## BACKGROUND

In her First Amended and Restated Complaint, Nora Dunn ("Plaintiff") alleges that the facts giving rise to her claim took place from October 2022 through June 2023. (Doc. # 40 ¶¶ 5(i)-(v)). At that time, Defendant Hydinger was Plaintiff's landlord and managed Plaintiff's apartment. (Doc. # 40 ¶ 5). Plaintiff claims that from October 2022 through April 2023, Defendant Hydinger refused to address problems with her apartment, including issues with running water, hot water, proper plumbing, sewer disposal, heating, and air conditioning in her unit. (*Id.* ¶ 6). Plaintiff also alleges that between October 2022 and June 2023, Defendant Hydinger (sometimes referred to as "Defendant") directed her "agents," Carter Manuel and RMI Realty Group ("RMI"), to refuse to repair Plaintiff's apartment because of her hoarding disorder. (*Id.* ¶ 5(ii)). However, according to Plaintiff, Defendant continued to take Plaintiff's rent payments. (*Id.* ¶ 5). In response to the ongoing problems in her unit, Plaintiff requested a temporary substitute apartment in which to live while her apartment was being repaired and to allow her time to deal with the many personal items

stored in her apartment. (*Id.* ¶ 11). Plaintiff alleges that despite this request, Defendant Hydinger sent Plaintiff a letter on October 21, 2022, demanding that Plaintiff leave her apartment before it would be restored to a habitable state. (*Id.* ¶ 12).

Plaintiff claims that rather than fixing the problem, Defendant ridiculed and made fun of her, blaming Plaintiff and her "hoarding disorder" for the problems that arose in her apartment. (*Id.* ¶¶ 5(iv)(a), 19(e)). Plaintiff also argues that Defendant placed a "lockbox" on the apartment door without her permission, harassed and pressured Plaintiff to move out of the unit before the termination of her lease, and sent Plaintiff a letter requiring her to leave and clean out the apartment as a condition to fix the problems in the apartment. (*Id.* ¶¶ 5(iii), 5(iv)(b), 5(v), 8, 12). Due to this, Plaintiff alleges, Plaintiff was forced under court supervision to move out of the apartment and live in a temporary long-term stay hotel. (*Id.* ¶ 13). Plaintiff further claims that although the City of Birmingham later condemned the apartment as uninhabitable, Hydinger continued to accept Plaintiff's rent while refusing to make repairs to make the apartment habitable. (*Id.* ¶¶ 14-15).

Plaintiff brings this action based on alleged violations of the Fair Housing Act ("FHA") and federal common law based on Plaintiff's "hoarding disorder," (*Id.* ¶¶ 50-52), as well as alleged violations of Alabama common law and the Alabama Landlord Tenant Act. (*Id.* ¶¶ 37-41). Plaintiff originally filed suit against five Defendants: Hydinger as the personal representative of the property owner; Pawnee Condominium Association; and Metcalf Management Group, RMI Realty Group ("RMI"), and Manuel as the property managers. (*See* Doc. # 1 ¶ 9). The court ordered dismissal of four of these Defendants pursuant to the parties' Stipulations of Dismissal. (Docs. # 35, 41). The only Defendant remaining is Hydinger. (Doc. # 40 ¶ 2). Plaintiff also previously filed a complaint in Alabama state court against Manuel and RMI, asserting claims under Alabama common law (breach of duty of reasonable care/affirmative negligence; wanton/recklessness; breach of contract; and wrongful conviction/abuse of process) and the Alabama Landlord Tenant

Act. (Doc. # 42-2 ¶¶ 5-12, 13-17, 18-20, 21-23, 24-26). Pursuant to a Joint Stipulation of Dismissal With Prejudice (Doc. # 42-4), the Circuit Court of Jefferson County dismissed this case with prejudice. (*See* Docs. # 42-3; # 44).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not satisfy Rule 8, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires a plaintiff to allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). In addition, "a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (per curiam) (citations and internal quotation marks omitted). This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the court determines that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the claims are due to be dismissed. *Id.* at 570.

## **DISCUSSION**

Defendant argues that all nine of Plaintiff's claims are due to be dismissed for failure to state a claim. (Doc. # 42 at 1). Plaintiff's claims include Intentional Discrimination under the FHA, (Count One), Retaliation (Count Two), Hostile Environment (Count Three), Failure to Accommodate (Count Four), violation of the Alabama Landlord Tenant Act (Count Five), Breach of Duty of Reasonable Care/Affirmative Negligence (Count Six), Wanton/Recklessness (Count Seven), Breach of Contract (Count Eight), and Wrongful Eviction/Abuse of Process (Count Nine). (Doc. # 40 ¶¶ 17-52).

Defendant Hydinger argues that Plaintiff's claims under the FHA should be dismissed because even if her allegations are true, hoarding is not a protected disability under the FHA. (Doc. # 42 at 2). Plaintiff's response to this argument is that hoarding is recognized by the American Psychiatric Association as a condition that disrupts a person's ability to use living spaces. (Doc. # 43 at 8).

Defendant further argues that Plaintiff's state law claims should be dismissed because Plaintiff is in privity with defendants in a prior Alabama state court lawsuit that was dismissed with prejudice. (Doc # 42 at 7-10). Plaintiff's response to this argument is that the claims against Defendant Hydinger were dismissed without prejudice and therefore are not barred by res judicata. (Doc. # 43 at 16).

4

Alternatively, Defendant argues that because Plaintiff's FHA claims are due to be dismissed because hoarding is not a protected disability, Plaintiff's state law claims should also be dismissed because supplemental jurisdiction over state law claims is improper where the district court has dismissed all claims over which it has original jurisdiction. (Doc. # 42 at 10-12). Plaintiff's response is that this supplemental jurisdiction argument is "without merit" because "the federal claims are valid." (Doc. # 43 at 16). The court discusses these issues below.

## I.      Fair Housing Act

Based solely on the allegations in the Complaint, there remains a question of which law Plaintiff relies on in bringing Count Three (her hostile environment claim). While the Eleventh Circuit has not squared the FHA against the Alabama Fair Housing Law, "it has held that 'the same legal analysis' applies to claims under the FHA and the Florida Fair Housing Act because the two laws are 'substantively identical.'" *Belcher v. Grand Reserve MGM, LLC*, 2018 WL 4600297, at *5 (M.D. Ala. Sept. 25, 2018) (quoting *Philippeaux v. Apt. Inv. & Mgmt. Co.*, 598 F. App'x 640, 643 (11th Cir. 2015)). A careful review shows that the Florida Fair Housing Act and the Alabama Fair Housing Law are for all relevant purposes substantively identical. For this reason, it is likely that the same legal analysis applies whether Plaintiff brought her claims under the FHA or the Alabama Fair Housing Law.[1]

The FHA makes it unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of . . . (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available."[2] 42

---

[1] In her Response, Plaintiff claims that the Hostile Environment claim is advanced under the FHA (Doc. # 43 at 12). However, because this is not clear based on the Complaint, the court will address both the FHA and the Alabama Fair Housing Law.

[2] Section 3604(f) of the FHA uses the term "handicap" rather than "disability" when referring to discrimination. In the present case, both parties use the term "disability" when referring to the disputed condition of Plaintiff. In addition, "[d]isability scholar . . . generally prefer the term 'disability' to handicap, and the Americans

U.S.C. § 3604(f)(1)(B). In other words, the FHA "makes it unlawful to 'discriminate against' a person in housing on the basis of disability." *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*, 46 F.4th 1268, 1276 (11th Cir. 2022). "A plaintiff can establish a violation under the FHA by proving (1) intentional discrimination, (2) discriminatory impact, or (3) a refusal to make a reasonable accommodation." *Bonasera v. City of Norcross*, 342 F. App'x 581, 583 (11th Cir. 2009) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201 (11th Cir. 2008)). Regardless of which violation is alleged, a plaintiff must first establish that she is a "handicapped individual" who is protected under the FHA. *Loren v. Sasser*, 309 F.3d 1296, 1302 (11th Cir. 2002) (per curiam) (addressing the plaintiffs' disabilities before addressing the merits of their claim).

Plaintiff argues that Defendant violated the FHA by intentionally discriminating against her and refusing to repair the damage to her apartment (Count One), by retaliating against her for her "hoarding disorder," (Count Two), and by failing to provide her with reasonable accommodations (Count Four). (*See* Doc. # 40). Because Plaintiff is required to show she is a "handicapped individual" within the meaning of the statute with respect to all three of these counts, the court initially addresses this element.

## A.   Disability/Handicap

The FHA defines "handicap" as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such impairment, or (3) being regarded as having such impairment." 42 U.S.C. § 3602(h)(1)-(3).

Plaintiff's "hoarding disorder" does not qualify as a "handicap" under the FHA. Though Plaintiff repeatedly uses the term "hoarding disorder" in her Amended Complaint (*see* Doc. # 40 ¶¶ 1, 5(i)(b), 5(ii), 5(iii), 7, 10, 12, 19(a)-(g), 26, 29), Plaintiff does not claim that her disorder

---

with Disabilities Act . . . reflects that preference." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 n.2 (11th Cir. 2014). Therefore, where relevant, this memorandum opinion also adopts the term "disability."

"substantially limits one or more of [her] major life activities" as required under the statute. 42 U.S.C. § 3602(h)(1). Instead, Plaintiff merely claims that her "hoarding disorder [] resulted in her storing volumes of clothes and personal items in boxes and throughout her apartment," (Doc. # 40 ¶ 7), and that "managing her large volume of personal items coupled with the despicable condition of the apartment was causing her great stress." (*Id.* ¶ 8).[3] "Major life activities," in turn, "means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 24 C.F.R. § 100.201(b). The Eleventh Circuit has held that merely alleging that a plaintiff "cannot bend or move easily," or that a plaintiff "walks, sits, stands or sleeps 'moderately below average'" does not adequately allege a disability under the FHA. *Wells v. Willow Lake Ests. Inc.*, 390 F. App'x 956, 958 (11th Cir. 2010) (quoting *Rossbach v. City of Miami*, 371 F.3d 1354, 1358 (11th Cir. 2004)). None of Plaintiff's allegations explain how her stress limits any of these major life activities. Further, Plaintiff does not allege "a record of having such impairment, or [] being regarded as having such impairment." 42 U.S.C. § 3602(h)(1)-(3).

Additionally, the court is not aware of any federal court that has classified hoarding as a "handicap" protected by the FHA. While Plaintiff relies on one case from the District of New Jersey to suggest otherwise, *Smith v. Hillside Vill.*, 279 F. Supp. 3d 537 (D. N.J. 2017), even that case fails to support Plaintiff's contention. In *Smith*, the court denied the defendant's Rule 12(b)(6) motion to dismiss, rejecting the defendant's arguments that the dismissal was warranted on the grounds of res judicata and the entire controversy doctrine. The defendant in *Smith* filed two

---

[3] Plaintiff's Restated and First Amended Response in Opposition to Defendant Hydinger's Motion to Dismiss Amended Complaint (Doc. # 47) asserts that Plaintiff has "alleged that the plaintiff has a known hoarding disorder, suffered from a known mental illness and vulnerability and these conditions overwhelmed her resulting in extreme trauma from the unlivable conditions . . . ." (*Id.* at 3). However, Plaintiff's First Amended and Restated Complaint (Doc. # 40) does not allege that her "hoarding disorder" caused her "extreme trauma from the unlivable conditions." It does, however, allege that it "was causing her great stress," (Doc. # 40 ¶ 8), and that "her mental health condition was being aggravated by the conditions of the apartment," (*Id.* ¶ 35), so the court rests its analysis above on this allegation in the Complaint and not on Plaintiff's Response.

separate state court actions, one seeking to evict the plaintiff and one to recover damages from her. Based on the state court's finding it did not have jurisdiction, the defendant lost both of those cases. The plaintiff then filed a lawsuit in federal court against the defendant for damages and to regain her tenancy. The defendant filed a motion to dismiss. The court denied the defendant's motion, reasoning that the plaintiff did not have a fair opportunity to litigate her claims and the defendant was not entitled to repose as a matter of equity. The court did *not*, however, find that "hoarding" was actionable under the FHA as Plaintiff suggests. In fact, the court seems to find the opposite. *Smith*, 279 F. Supp. 3d. at 542 n.5 ("[T]he Appellate Division note that the trial judge . . . had 'rejected [plaintiff's] claim that she was entitled to an accommodation under federal law . . . I take notice of [The Appellate Division's] account of the procedural history of the case.").

"Hoarding" has rarely been addressed in the context of the FHA. In some cases, hoarding is referred to as a symptom of an underlying illness, rather than itself being a "disability" protected under the FHA itself. *Roffman v. Knickerbocker Plaza Assocs.*, 2008 WL 919613, *1 (S.D.N.Y. Mar. 31, 2008) ("Ms. Roffman suffers from obsessive-compulsive disorder ("OCD") and, as a result, tends to hoard . . . ."); *Blatch ex rel. Clay v. Hernandez*, 360 F. Supp. 2d 595 (S.D.N.Y 2005) (explaining that two named plaintiffs hoarded different items due to their schizoaffective disorder and chronic paranoid schizophrenia). Other cases refer to "hoarding" as simply a behavior, rather than a symptom of a disability. *Sanders v. Edge Holdings*, 2013 WL 40429, at *4 (S.D. Cal. Jan. 2, 2013) (listing hoarding as one of the reasons the defendants terminated the plaintiff's lease). A singular federal case held that in an *in forma pauperis* action, the "very large holes in the § 1915 [*in forma pauperis* statute] sieve . . . constrained [the Court] to allow this hoarding-based claim to seep through to the next stage of the case," but emphasized that "[t]he Court is *not* in any way concluding that limits of the FHAA . . . can be stretched so far as to cover a "hoarding disability." *Goldsmith v. CBS TV Broadcasting, Pittsburgh, Inc.*, 2015 WL 1411944,

at *5 & n.11 (W.D. Pa. March 25, 2015).[4] After careful review, the court concludes that Plaintiff has not pleaded facts that establish her hoarding disorder "substantially limits one or more of [her] major life activities," as required under the FHA. 42 U.S.C. § 3602(h)(1).

Therefore, Plaintiff's claims under the FHA, including Counts One, Two, and Four, as well as Plaintiff's Hostile Environment Claim in Count Three, are due to be dismissed. Even though these claims fail because Plaintiff fails to plead a disability under the FHA, there are additional and alternative bases to dismiss each of these claims. So, for completeness, the court addresses those additional reasons below.

### B.      Intentional Discrimination

Even if Plaintiff had properly alleged that she had a "disability" under the FHA (and, to be clear, she has not), she has still failed to sufficiently plead intentional discrimination. Although Defendant's Motion to Dismiss (Doc. # 42) does not address this issue, Plaintiff raises it in her Response (Doc. # 43 at 9-11), and in her Restated and First Amended Response (Doc. # 47 at 2-4). Thus, the court analyzes the issue here.

"To prove intentional discrimination, 'a plaintiff has the burden of showing that the defendants actually intended or were improperly motivated in their decision to discriminate against persons protected by the FHA.'" *Bonasera v. City of Norcross*, 342 F. App'x 581, 584 (11th Cir. 2009) (quoting *Reese v. Miami-Dade Cnty.*, 242 F. Supp. 2d 1292, 1301 (S.D. Fla. 2002)); *see also Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524 (2015) (stating that disparate treatment claims require a plaintiff to establish that the defendant had a

---

[4] The court does not suggest that Plaintiff could not have pleaded her "hoarding disorder" in such a way that would survive this stage of litigation. In its research, the court did not find any similarly postured federal cases in which a "hoarding disorder" was considered a disability under the FHA, but it did find one New York state court that found a plaintiff had pleaded "hoarding" sufficiently to be a protected disability under the FHA. *See CUCS West 127th St., LLC v. E.E.*, 80 Misc. 3d 995, 1002-03 (N.Y. Civ. Ct. 2023) (considering, in a case in a completely different posture, "hoarding" as a protected "disability" under the FHA). The court questions the correctness of that legal ruling. There is no question, however, that it is not binding on this court.

discriminatory intent or motive). Plaintiff is required to show that she was "treated differently than similarly situated non-handicapped people." *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1216 (11th Cir. 2008) (citing *Loren v. Sasser*, 309 F.3d 1296, 1302 (11th Cir. 2002) (per curiam), which rejected handicapped persons' disparate treatment claim under the FHA because they "failed to introduce any evidence" that they had been treated differently than similarly situated non-handicapped people, *id.*); *see also Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*, 46 F.4th 1268, 1277-78 (11th Cir. 2022) (rejecting an FHA disparate treatment claim where plaintiffs with disabilities failed to show that they were treated less favorably than people without disabilities).

Plaintiff has not sufficiently pleaded facts to state a claim for intentional discrimination. Plaintiff makes numerous allegations about how Defendant failed to address the problems with her apartment, but not once does she claim Defendant treated her differently than a "non-handicapped" person.[5] Nor does she allege facts from which such disparate treatment could be inferred. Therefore, the court finds that Plaintiff failed to state a claim for which relief can be granted.

### C.    Failure to Accommodate

Alternatively, Plaintiff has failed to plead a failure to accommodate claim. Although Defendant's Motion to Dismiss (Doc. # 42) does not address this issue, Plaintiff raises it in her Response (Doc. # 43 at 14-16) and in her Restated and First Amended Response. (Doc. # 47 at 5-7). So, the court analyzes the issue here.

---

[5] In her Response to the Motion to Dismiss, Plaintiff claims that Defendant Hydinger "intentionally treated the plaintiff less favorably (i.e. differently) that other similarly situated tenants who were current on their rent and had leased the space for several years but who happened to need major repairs." (Doc. # 43 at 9). However, Plaintiff's First Amended Complaint does not specifically allege this. (*See* Doc. # 40 ¶¶ 17-25). At most, Plaintiff's First Amended Complaint alleges that "there was an absence of written or oral guidelines which foster the neutral resolution of adversarial complaints by employees similarly situated to the tenant." (*Id.* ¶ 20). Because a motion to dismiss turns on the allegations actually made in a complaint, and not on inconsistent arguments in a response to a motion to dismiss, this claim is not sufficiently pleaded. *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) ("In analyzing the sufficiency of the complaint, we limit our consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed.").

A plaintiff can show failure to accommodate by showing a defendant "refus[ed] to make reasonable accommodations when necessary to afford the person equal opportunity to enjoy a dwelling." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1285 (11th Cir. 2014). To state a claim for reasonable accommodation, a plaintiff must establish that (1) she is disabled, (2) she requested a reasonable accommodation, (3) the requested accommodation was necessary to afford her an equal opportunity to use and enjoy a dwelling, and (4) the defendants refused to make the requested accommodation. *Sailboat Bend*, 46 F.4th at 1275 (11th Cir. 2022). Plaintiff pleaded that she "sent multiple online notices to the landlord advising them" of the need to repair the condition of her apartment, that she told "landlord's maintenance staff" that "she needed the landlord to provide her with a substitute apartment and give her some time to gather assistance and support to move and separate her personal items," and that "[t]he landlord responded to her accommodation request by refusing to accommodate her disability and by attempting to evict [her]." (Doc. # 40 ¶¶ 33, 35-36).

As discussed above, Plaintiff has not established that she has a disability; therefore, this claim, too, necessarily fails. In addition to that, Plaintiff has also failed to plead facts that support the second and third elements of this claim. Under the second element, a plaintiff must show that "the requested accommodation 'is both efficacious and proportional to the costs to implement it.'" *Bhogaita*, 765 F.3d at 1289 (quoting *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002)). To satisfy the third element, a plaintiff must show that "the requested accommodation ameliorates the disability's effects." *Id.* Plaintiff has not pleaded that her requested accommodation was reasonable and proportional, nor has she pleaded that it was necessary to ameliorate the effects of her disability. Plaintiff merely states that she requested an accommodation from Defendant and that Defendant refused to afford her that accommodation. Therefore, Plaintiff fails to state a claim for failure to reasonably accommodate under the FHA.

### D.      Retaliation

Although Defendant's Motion to Dismiss (Doc. # 42) does not address this issue, Plaintiff has raised it in her Response (Doc. # 43 at 11-12), and in her Restated and First Amended Response. (Doc. # 47 at 4). The court analyzes the issue here.

"To state a claim for retaliatory housing discrimination, a plaintiff must assert a defendant coerced, intimidated, threatened, or interfered with his exercise of rights granted under the FHA . . . ." *Philippeaux v. Apartment Inv. & Mgmt. Co.*, 598 F. App'x 640, 644 (11th Cir. 2015). "To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action." *Id.* (quoting *Walker v. City of Lakewood,* 272 F.3d 1114, 1128 (9th Cir. 2001)) (internal citations omitted).

Plaintiff's retaliation claim fails because she has not sufficiently pleaded that she engaged in a protected activity. Plaintiff claims that her protected activity was to seek an accommodation for her hoarding condition. As discussed above, Plaintiff did not sufficiently plead that Defendant's denial of Plaintiff's requested accommodation was unlawful. To sufficiently plead that she engaged in a protected activity even where a Defendant's conduct was "actually lawful," Plaintiff must "demonstrate[] a good faith, reasonable belief that the conduct engaged in was unlawful." *Id.* at 645 (quoting *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998)) (cleaned up). Plaintiff has not alleged this. Plaintiff's Amended Complaint merely states that "the tenant sought an accommodation for her condition and sought this relief to compel the landlord's compliances with the FHA." (Doc. # 40 ¶ 27). Because there are no details demonstrating Plaintiff's "good faith, reasonable belief" that this denied accommodation was "unlawful," this claim also fails.

E.      **Hostile Environment**

Although Defendant's Motion to Dismiss (Doc. # 42) does not address this issue, Plaintiff raises it in her Response (Doc. # 43 at 11-12), and in her Restated and First Amended Response. (Doc. # 47 at 4-5). The court analyzes the issue here.

"Rental housing may be characterized as 'hostile' when a landlord deprives his tenant 'of her right to use or enjoy her home' by way of 'severe or pervasive' harassment." *Barlett v. Hames*, 2023 WL 408657, at *14 (N.D. Ala. June 15, 2023). To determine whether a plaintiff was subject to a hostile environment "depends upon the totality of the circumstances . . . from the perspective of a reasonable person in the aggrieved person's position." *Id.* (quoting 24 CFR § 100.600(a)(2)(i)(A)-(C)).

Plaintiff's First Amended and Restated Complaint alleges that "[t]he landlord created an environment that blamed and victimized [Plaintiff] because of the clutter from her personal items; because of her caution to the landlord that their dehumanizing treatment of her and their eviction efforts were negatively affecting her emotional and mental health." (Doc. # 40 ¶ 29). It also alleges that "[t]he situation became so unbearable and hostile given the landlord's unwillingness to reasonably accommodate her, that [Plaintiff] could no longer bear to live in the cold, mold and sewage infested environment; she became temporarily homeless; and she was required to pay to live in an expensive daily motel typically reserved for transient and homeless persons." (*Id.* ¶ 30).

Merely incanting the word "hostile" does not sufficiently plead a hostile environment claim. The only harassment that Plaintiff pleads is that Defendant "blamed and victimized [Plaintiff]" and that "their eviction efforts were negatively affecting her emotional and mental health." (*Id.* ¶ 29). Plaintiff elaborates on what constituted this harassment elsewhere by alleging that Defendant's agents were "ridiculing and making fun of her and her apartment as dirty and trashy and by blaming [Plaintiff] for the lack of water and heating and air," and "by attempting to

falsely characterize the tenant as a poor credit risk to avoid offering the tenant another apartment or temporary living space." (*Id.* ¶¶ 5(iv)(a), (c)). To a reasonable person, blaming and victimizing a tenant by calling their apartment "dirty and trashy," or by characterizing them "as a poor credit risk" could be offensive or hurtful, but, as pleaded here, it does not rise to the level of "severe." Moreover, even if this behavior would be severe to a reasonable person, Plaintiff has not pleaded any facts indicating that this was pervasive behavior, or even that it occurred more than once.

Plaintiff also attempts to conflate her failure to accommodate claim with a hostile environment claim, arguing that the failure to provide a substitute apartment also created a hostile environment. The court addressed the failure to accommodate claim above, and need not consider it here as part of its analysis of Plaintiff's hostile environment claim.

## II.    Res Judicata

Defendant also argues that, under the doctrine of res judicata, the dismissal with prejudice of Plaintiff's previous state lawsuit bars her remaining state law claims in Counts Five, Six, Seven, Eight, and Nine, which allege failure to comply with the Alabama Landlord Tenant Act, Breach of Duty of Reasonable Care/Affirmative Negligence, Wanton/Recklessness, Breach of Contract, and Wrongful Eviction/Abuse of Process. (*See* Doc. # 42 at 10). Plaintiff's response to this argument is that Defendant Hydinger was one of the "[u]nnamed defendants" who by stipulation were specifically excluded from the dismissal with prejudice, and that the state case did not involve a federal FHA claim. (Docs. # 47 at 7-9; # 43 at 16).[6]

---

[6] Separately, Plaintiff suggests that "this argument is really an abatement claim," and that under federal case law on abatement, the court should not dismiss this case. (Doc. # 47 at 9). Black's Law Dictionary defines "abatement" as "[t]he suspension or defeat of a pending action for a reason unrelated to the merits of the claim." *Black's Law Dictionary* 3 (8th ed. 2004). Examples of abatement include that the cause of action was commenced prematurely, that the plaintiff's interest in the lawsuit has terminated or transferred to another party, that the lawsuit cannot proceed due to death of one of the parties, or that there is a separate, identical lawsuit pending. *See Hyman v. City of Gastonia*, 466 F.3d 284 (4th Cir. 2006). This is not a case about abatement. The case law Plaintiff cites about abatement discusses how it applies to the "pendency of a state court action" – not how it applies to a state court action that is no longer pending. Plaintiff thus does not argue how abatement is relevant to the instant case, where the state lawsuit was dismissed with prejudice. Because the previous case reached a *final* judgment in state court, this is an issue of res judicata.

Res judicata is a doctrine that bars a party from asserting a claim that they have already had an opportunity to litigate. Federal courts apply state law to a defense of res judicata, *NAACP v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990), and in Alabama, the elements of res judicata are "(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions." *Equity Res. Mgmt., Inc. v. Vinson*, 723 So. 2d 634, 635 (Ala. 1998).

In Alabama, a dismissal with prejudice is an adjudication on the merits, satisfying the first element of res judicata. *Smith v. Union Bank & Trust Co.*, 653 So. 2d 933, 935 (Ala. 1995); *Hammermill Paper Co. v. Montreal Boyette Sandlin Day*, 336 So. 2d 166, 168 (Ala. 1976). As Plaintiff concedes, the Circuit Court of Jefferson County was a court of competent jurisdiction that entertained Plaintiff's state law claims and dismissed them with prejudice. (Doc. # 44 at 4). This satisfies the first and second elements of res judicata. (Doc. # 47 at 7).

The third element requires Defendant Hydinger to have been in privity with the state lawsuit defendants Carter Manuel and RMI Realty Group. As the Order of Dismissal by the Circuit Court of Jefferson County indicates, Plaintiff's state law claims against Carter Manuel and RMI Realty Group were dismissed *with* prejudice. (Docs. # 42-3; # 44). The only claims that were dismissed without prejudice were claims "against fictitious defendants or parties not named [t]herein." (Docs. # 42-3; # 44). So, if Defendant is in privity with Manuel and RMI Realty Group, then the third element of res judicata is satisfied.

The privity prong of res judicata requires that a party be "in privity with a party to the prior action or that the non-party's interests were adequately represented by a party in the prior suit, and the relationship between the party and non-party is not so attenuated as to violate due process." *Whisman v. Alabama Power Co.*, 512 So. 2d 78, 82 (Ala. 1987) (citations omitted). Privity in Alabama "has not been uniformly defined," but often "arise[s] from (1) the relationship of one

who is privy in blood, estate, or law; (2) the mutual or successive relationship to the same rights of property; [or] (3) an identity of interest in the subject matter of litigation." *Hughes v. Martin*, 533 So. 2d 188, 191 (Ala. 1988) (internal quotation marks omitted). The Alabama Supreme Court has held that privity can occur where there is "substantial identity" between the parties. *See Whisman v. Alabama Power Co.*, 512 So. 2d 78, 82-83 (Ala. 1987). In *Whisman*, the Alabama Supreme Court held that where a manager employed by a company was heavily involved in a lawsuit against the company, there was "substantial identity." *Id.* at 83. The court drew from the reasoning in the Second Circuit case of *Kreager v. Gen. Electric Co.*, in which a president of a company was not named as a party in the first action but participated substantially by attending trial and testifying on behalf of the company. *See* 497 F.2d 468, 472 (2d Cir. 1974). The Second Circuit held that the president was in privity with the company because "[h]e had an identical interest with [the company] and was bound by the judgment against it." *Id.* Although *Kreager* is not authoritative, the Alabama Supreme Court incorporated its reasoning in *Whisman* – a similar case – holding that a manager of a company who was the company's representative at trial was in privity with the company. *Whisman*, 512 So. 2d at 83.

Under the theory of "substantial identity," Defendant Hydinger is in privity with Carter Manuel and RMI Realty Group. Defendant argues that she was "an active participant in the state court case," participating in depositions and with "an identical interest in any outcome against Carter Manuel and RMI Realty Group." (Doc. # 42 at 10). Plaintiff admits this, and concedes that Defendant was "'involved' in the state litigation." (Doc. # 47 at 8). Defendant's involvement in the state court case resembles how the company president in *Kreager* substantially participated in an earlier trial and was thus in privity with the parties to that trial, *see* 497 F.2d at 472, and how the company manager in *Whisman* was the company's trial representative and was thus in privity with that company, *see* 512 So. 2d at 83. Plaintiff's Amended Complaint also alleges that Carter

Manuel and RMI Realty Group were Defendant Hydinger's agents. (Doc. # 40 ¶ 5, 12, 21). Like the president and company manager in *Kreager* and *Whisman*, Defendant as landlord shared an identical interest with her agents, Manuel and RMI. *See Kreager*, 497 F.2d at 472; *Whisman*, 512 So. 2d at 83. This identical interest indicates that Defendant shares a "substantial identity" with these state court defendants. And because the claims against these defendants were dismissed with prejudice by the state court, Plaintiff is barred from bringing these same claims against Defendant in the instant action.

Plaintiff further argues that because Defendant was "involved" in the state litigation, she is estopped from asserting res judicata because she failed to raise the issue of res judicata in state court. (*Id.* at 8). But, the issue of res judicata is one that arises after a previous suit reaches final judgment, and thus cannot have been raised in a previous suit *before* the first court reached a final judgment. This means that Defendant's failure to preemptively assert that res judicata might be an issue in a subsequent suit does not estop her from asserting res judicata as an issue in this action.

## III.   Supplemental Jurisdiction

Defendant argues that an additional reason Plaintiff's state law claims should be dismissed is because it would be improper to exercise supplemental jurisdiction[7] over them after their anchoring federal claims have been dismissed. Federal courts are courts of limited jurisdiction. As such, a federal court must have a basis for asserting subject-matter jurisdiction over each claim in a plaintiff's complaint. Plaintiff's First Amended and Restated Complaint asserts that the basis for federal subject-matter jurisdiction is federal question jurisdiction under the FHA. 28 U.S.C. § 1331; (Doc. # 40 ¶ 3). A federal district court normally does not have subject-matter jurisdiction over state law claims that are not asserted in diversity. But, if the state law claims share with the

---

[7] Defendant also refers to this as "pendent jurisdiction." Here, the court uses the term from 28 U.S.C. § 1367, "supplemental jurisdiction."

anchoring claims a "common nucleus of operative fact" such that a plaintiff "would be expected to try them in one judicial proceeding," then supplemental jurisdiction allows a federal court to try the claims together. *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); 28 U.S.C. § 1367. Even where the state law claims share this common nucleus, however, a federal district court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

In the instant case, the claims over which this court has original jurisdiction are the federal FHA claims asserted in Counts One, Two, Three, and Four. As explained above, each of those claims are due to be dismissed under Defendant's Motion to Dismiss (Doc. # 42) for failure to state a claim. Therefore, this is just the situation that Congress envisioned in 28 U.S.C. § 1367(c)(3), which directs that the "district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). The Eleventh Circuit has emphasized that "[s]tate courts, not federal courts, should be the final arbiters of state law." *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). Thus, "[w]here, as here, a court has dismissed all federal claims from a case, there is a very strong argument for dismissal, especially where the federal claims are dismissed prior to trial." *Ingram v. School Bd. of Miami-Dade Cnty.*, 167 Fed. App'x 107, 108 (11th Cir. 2006). Further, "if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims." *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (internal citations omitted). Therefore, even if Plaintiff's claims were not due to be dismissed under the doctrine of res judicata, Plaintiff's state law claims against Defendant would be due to be dismissed under § 1367(c).

## <u>CONCLUSION</u>

For the reasons discussed above, the Motion to Dismiss (Doc. # 42) is due to be granted, and Plaintiff's Motion for Partial Summary Judgment (Doc. # 48) as well as Defendant's Motion to Dismiss Plaintiff's Motion for Partial Summary Judgment (Doc. # 52) are moot.

An order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this September 23, 2024.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE

19